[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action by the plaintiff husband against the defendant wife for dissolution of marriage on the grounds of irretrievable breakdown. The parties have been married for twenty-three years, since May 24, 1975. They have two minor children, Ryan, who is fourteen, and Ashley, who will be eight in March. At trial, each party testified and submitted written proposed orders and sworn financial affidavits. The parties entered into certain stipulations, which will be incorporated into the court's orders. The court had the opportunity to observe the demeanor and evaluate the credibility of each party. Based upon the evidence, the court makes the following findings.
The parties first met when they were eighteen year old high school seniors. and married soon after. After the marriage, they shared an apartment in Bristol. The wife worked as a waitress for several years, while the husband began his career as a service advisor and manager at various Chevrolet dealerships in the area. His first job in the field, which was at his father's dealership, lasted twelve years. When he left that job to start his own used car and automobile service business in 1985, he was earning $45,000.00 per year. The business was not successful, but the parties were eventually able to pay off the $50,000.00 debt they jointly incurred for the business. He is presently employed at Valente Chevrolet as a service coordinator, and earns $631.00 per week.
The wife has not consistently worked outside the home during the marriage, but did hold several jobs as a waitress. She has, however, completed computer courses necessary for employment as an administrative assistant, and is trying to re-enter the workforce on a full time basis. She is presently earning $165.00 per week, but has not yet worked a full forty hour week. There are several reasons for her present inability, to work a full week. First, she has not yet reached the level of confidence in her ability to enable her to do so. Secondly, and more importantly, she suffers from depression, for which she takes regular medication. There is no evidence that she will be unable to work a full week for those reasons in the future.
The wife's depression began in around 1993. At that time, she had given birth to both children, but had also experienced a long history of abusive and insensitive behavior from the husband, which commenced soon after the marriage. In addition. beginning in the early 1990s she began to experience difficulty with the CT Page 2543 parties' son, Ryan, who was diagnosed with attention deficit disorder in 1994. Since then, Ryan has experienced even greater difficulty, and his diagnosis was eventually expanded to include multiple complex learning disabilities and depression. The boy presently attends a special education program at Gingras Center. The wife has had a stormy relationship with Ryan over the past several years, and he currently resides with his father.
There are two principal issues of fault. The first is the husband's history of abusive conduct toward the wife. The husband's complete denial of such conduct lacks credibility. The second is that the husband has had a virtually complete inability to understand, appreciate, or help with the wife's illness.[1]
These have not only contributed substantially to the breakdown of the marriage, but may also be inferred to have hindered the wife's inability up to the present time to maintain fu11 time employment.
The parties' principal asset is their jointly owned house in Southington, which is valued at $180,000.00 subject to a $14,000.00 equity loan on which the parties are paying interest only. The parties bought their first house for $37,500.00, using equal gifts of $1,000.00 from each of their parents for the down payment. In 1985, they sold the first house, yielding $71,000.00 in net proceeds, which were used for the purchase of the marital home. This enabled them to enjoy their home with only a small mortgage. The wife presently occupies the marital home with the daughter, while the husband lives in a much smaller rental property with the son. The husband seeks to have the house sold and the proceeds divided equally, so that he and Ryan can have living quarters comparable to those enjoyed by the wife and Ashley.
The parties have agreed that the court should order joint legal custody of the children, with Ryan's principal residence to be with the husband and Ashley's principal residence to be with the wife. The court finds that those orders are in the best interests of the children, and will enter them. However, the court will require as part of its orders that both parties participate in decisions concerning the educational and medical needs of their children, and that neither will act unilaterally with respect to those needs. The court has concerns about the husband's laissez-faire approach to Ryan's educational needs and to his medical/emotional condition. He denies that Ryan has any serious medical needs related to his emotional status or his CT Page 2544 learning disabilities, and he does not fully understand the educational program in which Ryan has been placed or the prognosis for Ryan's future schooling. In addition, the court finds that the husband acted inappropriately when he failed to inform the wife of Ryan's injury in an automobile accident. Nevertheless, it would be impossible for Ryan to reside with the wife at this time.
The court finds that it has jurisdiction, that all statutory stays have expired, and that the marriage of the parties has broken down irretrievably. In making its orders, the court has considered the statutory criteria set forth in Sections 46b-62,46b-81, and 46b-82 of the Connecticut General Statutes as well as applicable case law. Based upon the foregoing, the court enters the following orders.
1. The marriage of the parties having broken down irretrievably, the same is hereby dissolved.
2. The parties will have joint legal custody of the two minor children, Ryan, who was born on August 4, 1984, and Ashley, who was born on March 12, 1991. Ryan shall reside primarily with the husband, and Ashley shall reside primarily with the wife. Each parent shall have reasonable rights of visitation with both children. Each parent shall immediately inform the other of any extraordinary medical condition of either child, whether that condition results from emotional, organic, or accidental cause. Both parents shall participate in all decisions concerning the medical treatment and educational programming of both children, and each parent shall fully inform the other of each child's medical treatment and educational progress. Both parents shall have access to the medical and educational records of both children, and shall be entitled to participate fully in school activities including but not limited to parent conferences, counseling sessions, and PPT meetings. If the parties are unable to agree concerning the medical care or educational programming for either child, they shall return to court for further orders.
3. The husband will pay child support to the wife for Ashley in the amount of $123.00 per week, which is consistent with the child support guidelines. Child support will be paid until Ashley reaches the age of eighteen or graduates from high school, whichever is later, but in no event beyond her nineteenth birthday. CT Page 2545
4. The husband will maintain health insurance for the benefit of both minor children, if and when available through his employment. The wife shall have all rights and powers specified in Conn. Gen. Stats. 46b-84(d). Any unreimbursed medical, dental, optical, prescription, and counseling expenses for the children during their minority shall be paid equally by the parties.
5. Each party shall maintain $50,000.00 of life insurance, unencumbered. on his or her life and shall name the children as primary and irrevocable beneficiaries during their minority.
6. The children's savings accounts shall remain intact, and shall not be considered a part of the marital estate. The parties shall be joint custodians on the children's accounts during each child's minority.
7. The husband shall be entitled to claim the children as a deduction for income tax purposes.
8. The wife shall have the 1994 Chevrolet Blazer automobile and the husband shall have the 1994 Chevrolet pick-up truck. The husband shall indemnify and hold the wife harmless on account of any loan for the pick-up truck. The parties shall divide their remaining personal property between them. If they are unable to agree on a division of personal property, they shall submit the issue to family relations for mediation. If they are unable to agree after mediation, they shall return to court for further hearing and orders concerning personal property. The court will retain jurisdiction over the division of personal property.
9. The wife shall have the right to elect to COBRA benefits enabling her to elect to be insured at her expense under the husband's medical plan at his employer. The husband shall cooperate in facilitating any application filed by the wife for COBRA benefits.
10. The wife shall keep the $848.00 homeowner's insurance payment she received, and shall apply it to the repair for which it was received.
11. The husband shall pay the wife the sum of $75.00 per week as alimony for eleven years and six months, which shall be modifiable as to amount upon a substantial change in the circumstances of either party. The term of alimony shall not be reduced by modification, but may be increased by modification if CT Page 2546 the wife is unable to work because of a medical condition. Alimony shall terminate on the death of either party or the remarriage of the wife.
12. The husband shall quit claim to the wife all of his right, title, and interest in and to the marital home at 10 Sunset Ridge, Southington, Connecticut. The wife shall place the house on the market for sale upon the happening of the first of the following events: the death or remarriage of the wife; the failure of the wife to use the home as a principal residence for herself and at least one of the children; Ashley's graduation from high school; or Ashley's nineteenth birthday. Upon the sale, the wife shall pay the husband thirty-five (35%) percent of the net equity in the house after payment of the equity line of credit, sales commissions, and expenses of sale, and shall keep and retain as hers sixty-five (65%) percent of the net equity of the house after payment of such expenses. The wife shall continue to pay interest on the home equity loan. Any payment of principal will be made by the wife paying 65% and the husband paying 35%, but the parties are not required by this order to pay principal unless their failure to do so will cause a default in the equity loan, in which case they are required to pay principal as set forth herein. The husband will be entitled to secure his interest in the house by any legally sufficient and appropriate notice on the land records, but shall subordinate that notice to any refinancing the wife shall obtain providing that the amount of the refinance does not impair his collateral in and to 35% of the net equity. His failure or refusal to execute subordination documents as required herein when requested shall operate to discharge any notice of interest he may have filed. The wife shall have the option of buying the husband out of his interest at any time. If the wife undertakes to buy the husband out, the parties shall agree on an appraiser who shall determine a gross value for the property. If the parties are unable to agree upon an appraiser, the court will appoint an appraiser. The husband will pay 35% of all repairs to the house which exceed $100.
Judgment will enter accordingly.
BY THE COURT
GRUENDEL, J.